UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                                     :

ALICIA ETHEREDGE-BROWN and        :
ROBERT BROWN,                                   :
                                  Plaintiffs,  :          13 Civ. 1982 (JPO)
                                                    :
                 -v-                    :          OPINION AND ORDER
                                                    :
AMERICAN MEDIA, INC., and          :
DERRICK HANDSPIKE,                 :
                                  Defendants. :
-------------------------------------------------------------- X

J. PAUL OETKEN, District Judge:

        This is a defamation action filed by Bobby Brown ("Brown") and his wife, Alicia Etheredge ("Etheredge"), arising from an article published by the *National Enquirer* in March 2012, shortly after the death of Whitney Houston ("Houston"). The article contained statements asserting that Brown and Houston had reestablished an intimate relationship before her death and were planning to re-marry. The lawsuit names as defendants American Media, Inc. ("AMI"), which owns and operates the *National Enquirer*, and Derrick Handspike ("Handspike"), an individual who is quoted in the article.

        Defendant AMI has filed a motion for summary judgment, arguing that this lawsuit is time-barred under the one-year statute of limitations applicable to defamation claims. For the reasons that follow, AMI's motion is denied.

**I.    Discussion**

    **A.    Jurisdiction**

        Subject matter jurisdiction of this action is based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1). The complaint alleges that Plaintiffs are residents of the State of California; that Defendant AMI "has a business address" in New York; and that Defendant

Handspike is a resident of Georgia. The Court assumes that the allegations intend to state that AMI's principal place of business is in New York. The complaint does not allege in which state AMI is incorporated. Assuming that it is not incorporated in California, there appears to be complete diversity for purposes of § 1332(a)(1). Plaintiffs request an award of damages "in excess of one million dollars," and therefore the amount-in-controversy requirement is satisfied.

B.     **Summary Judgment Standard**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A fact is material if it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a dispute is genuine if, considering the record as a whole, a rational jury could find in favor of the non-moving party, *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The initial burden of a movant on summary judgment is to provide evidence on each element of his claim or defense illustrating his entitlement to relief. *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). If the movant makes this showing, the burden shifts to the non-moving party to identify specific facts demonstrating a genuine issue for trial, *i.e.*, that reasonable jurors could differ about the evidence. Fed. R. Civ. P. 56(f); *Anderson*, 447 U.S. at 250-51. The court should view all evidence "in the light most favorable to the non-moving party and draw all reasonable inferences in its favor," and a motion for summary judgment may be granted only if "no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (citation omitted). At the same time, the non-moving party cannot rely upon mere "conclusory statements, conjecture, or

speculation" to meet its burden. *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996) (citing *Matsushita*, 475 U.S. at 587).

      C.      **Statute of Limitations**

New York imposes a one-year statute of limitations on defamation claims. CPLR § 215(3).[1] Under the "single publication" rule, the statute of limitations ordinarily begins to run at the time of the "first publication"—that is, "the earliest date on which the work was placed on sale or became generally available to the public." *Van Buskirk v. N.Y. Times Co.*, 325 F.3d 87, 89 (2d Cir. 2003).

The paper version of the *National Enquirer* edition with the challenged article bore a cover date of "April 2, 2012." It is settled, however, that the "cover date" is not dispositive; what matters is the date on which the publication actually went on sale to the public. *See, e.g., Suss v. N.Y. Media, Inc.*, 69 A.D.3d 411, 411-12 (1st Dep't 2010); *Khaury v. Playboy Publ'ns, Inc.*, 430 F. Supp. 1342, 1344-45 (S.D.N.Y. 1977).

AMI has submitted an affidavit from its Senior Vice President for Operations stating that (1) copies of this edition of the *National Enquirer* were printed and shipped to wholesalers beginning on March 20, 2012; (2) copies were mailed to subscribers on March 21, 2012; (3) copies were delivered to newsstands beginning on March 21, 2012; and (4) all copies of the edition were distributed by March 23, 2012. Thus, AMI contends, the article "was published on March 23, 2012, at the latest." (AMI Mem., Dkt. No. 8, at 5.)

---

[1] California law also applies a one-year statute of limitations to defamation claims. Cal. Code P. § 340(c). The parties appear to treat New York law as applicable here, and the Court will assume that New York law applies for purposes of this motion.

The complaint in this case was file-stamped March 25, 2013.  (*See* Dkt. No. 1.)  If that is the date of filing, and if March 23, 2012 (or earlier) is the date of publication, then this action is time-barred.

Counsel for Plaintiffs, however, has submitted his own affidavit, averring (1) that he mailed the complaint to the Clerk's Office of this Court on Wednesday, March 20, 2013 (apparently from Boston, and apparently by regular mail rather than certified or registered mail); and (2) that he spoke by telephone on Friday, March 22, 2013 with two individuals in the Clerk's Office and was informed that the documents had been received on that date.

A complaint is "filed" when it is delivered into the "actual custody" of the Clerk, not when it is mailed.  *Greenwood v. State of NY Office of Mental Health*, 842 F.2d 636, 639 (2d Cir. 1988).  A filing is presumed to be made on the date file-stamped by the Clerk; indeed, that is the purpose of file-stamping papers.  *Id.*  However, clerical errors by the Clerk's Office are not inconceivable.

The Court concludes that it is unnecessary to decide, at this stage, whether the complaint was filed on March 22 or March 25, 2013, because summary judgment should be denied on an alternative ground.  The parties appear to agree that the *online* version of the article first appeared on the *National Enquirer*'s website, www.nationalenquirer.com, on March 26, 2013.  Plaintiffs argue that this constitutes a "republication" of the article, re-triggering the statute of limitations.

Courts have held that, notwithstanding the single publication rule, the publication of a work may constitute a "republication"—giving rise to a new cause of action and re-starting the statute of limitations—in circumstances where the new publication arises from a conscious act that is undertaken in order to reach a new audience.  *See Rinaldi v. Viking Penguin, Inc.*, 101

4

Misc. 2d 928, 422 N.Y.S.2d 552 (S. Ct. N.Y. Co. 1979), *aff'd as modified*, 73 A.D.2d 43, 425 N.Y.S.2d 101 (1st Dep't 1980), *aff'd*, 52 N.Y.2d 422 (1981); *Cusano v. Klein*, 264 F.3d 936, 949 (9th Cir. 2001).  *See generally* Robert D. Sack, *Sack on Defamation* § 7:2 (4th ed. 2012).

One of the classic examples of republication is the new offering of a hardback book in paperback format.  The New York courts in *Rinaldi* and the Ninth Circuit in *Cusano* have held that, at least in the circumstances of those cases, the initial publication of the paperback edition re-started the statute of limitations on a defamation claim.  In *Rinaldi*, the court observed that the publisher's "decision to release [the book] in paperback was a conscious attempt to reach an entirely new market of readers through a different format at a different price."  422 N.Y.S.2d at 556, 101 Misc. 2d at 934.

Research has not revealed cases addressing the precise question presented here:  whether the initial online website release of an article that was previously published in a paper format constitutes a republication, re-triggering the statute of limitations.  Of course, courts have overwhelmingly held, as the New York Court of Appeals held in *Firth v. State*, 98 N.Y.2d 365, 371-72 (2002), that the mere continued availability of material on a website does not constitute an ongoing "republication."  *Sack on Defamation* § 7:2.2 & notes 26-29.  But that is a different question.  The closest case may be the later decision by the Third Department in a subsequent case, *Firth v. State*, 306 A.D.2d 666, 667, 761 N.Y.S.2d 361, 362 (3d Dep't 2003), in which the court held that the plaintiff's allegation that the challenged report had been "moved to a different Internet address" was sufficient to state a claim for "republication to a new audience akin to repackaging a book from hard cover to paperback."

In any event, Plaintiffs have at least a plausible argument that the initial online publication of the article on the *National Enquirer*'s website on March 26, 2012—several days

after the paper edition had been sent to subscribers' homes and sold at newsstands and supermarkets—was a republication.[2] It is common for publishers to make online content available (often for free) only after some period of time in which the content is sold in paper format (usually for a price). It is plausible to infer that this is done as part of a conscious effort to reach a new audience.

There has been no discovery on these issues. And as the non-movants, Plaintiffs are entitled to all reasonable inferences on this motion. Because it is not beyond genuine dispute that this action is time-barred, summary judgment on statute of limitations grounds is premature. However, the Court may entertain a subsequent summary judgment motion on the republication issue, or other statute of limitations issues, if the circumstances warrant such a motion.

## II.  Conclusion

For the foregoing reasons, Defendant American Media's motion for summary judgment is DENIED without prejudice.

The Clerk of Court is directed to close the motion at Docket Entry No. 5.

SO ORDERED.

Dated: March 31, 2014
       New York, New York

_____
J. PAUL OETKEN
United States District Judge

---

[2] The question whether the initial Internet publication of the allegedly defamatory article constitutes a republication is a question of fact, at least in part. *See Firth v. State*, 12 A.D.3d 907, 907, 785 N.Y.S.2d 755, 756 (3d Dep't 2004) ("This Court previously determined that questions of fact exist regarding whether publication of the report on a different Web site constituted republication.").