```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
  ALICIA ETHEREDGE-BROWN and ROBERT                         :
  BROWN,                                                    :
                                                            :
                              Plaintiffs,                   :
                                                            :   13-CV-1982 (JPO)
                  -v-                                       :
                                                            :   OPINION AND ORDER
  AMERICAN MEDIA, INC. and DERRICK                          :
  HANDSPIKE,                                                :
                              Defendants.                   :
                                                            :
------------------------------------------------------------X
```

J. PAUL OETKEN, District Judge:

Alicia Etheredge-Brown and Robert Brown (together, "Plaintiffs") bring this action for defamation. The sole claim remaining in the case is against individual defendant Derrick Handspike. For the reasons that follow, the claim against Handspike is dismissed under Rule 4(m) of the Federal Rules of Civil Procedure.

**I.    Background**

Plaintiffs filed this diversity action on or around March 25, 2013, asserting defamation claims against Handspike and American Media, Inc. ("AMI"),[1] the owner of a publication called the *National Enquirer*. (Dkt. No. 1.) In March 2014, the Court denied a motion for summary judgment by AMI on the grounds of the statute of limitations (Dkt. No. 17), and ultimately the claims against AMI were voluntarily dismissed with prejudice (Dkt. No. 25).

Plaintiffs did not serve Handspike with process until May 30, 2014, more than 400 days after the filing of the complaint. (Dkt. No. 23.) Handspike failed to respond. Plaintiffs took no

---

[1] This entity was designated "America Media, Inc." in the complaint.

1

action concerning Handspike until they were directed to inform the Court by November 24, 2014, whether they intended to proceed against him. (Dkt. No. 26.) Plaintiffs responded in the affirmative, but by December 22, 2014, Plaintiffs had not properly begun the process of seeking a default judgment against Handspike. At that time, the Court ordered them to show cause why the claim should not be dismissed for failure to prosecute. (Dkt. No. 29.)

On January 5, 2015, the Clerk of the Court entered a certificate of default as to Handspike (Dkt. No. 30), and on January 14, 2015, Plaintiffs filed a motion for default judgment (Dkt. No. 32). On April 16, 2015, the Court denied the motion for default judgment without prejudice and ordered Plaintiffs to show cause why the claim against Handspike should not be dismissed for failure to comply with Rule 4(m).[2] (Dkt. No. 37.) Plaintiffs' counsel has filed an affidavit in which he asserts that dismissal under Rule 4(m) is unwarranted. (Dkt. No. 38.)

## II. Discussion

As pertinent here, Rule 4(m) provides:

> If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). "Plaintiffs bear the burden of showing that there was good cause in failing to timely serve a defendant." *Carroll v. Certified Moving & Storage, Co.*, No. 04 Civ. 4446

---

[2] The Court initially did not perceive the problem concerning the date of service under Rule 4(m) because the docket text accompanying the affidavit of service, the Clerk's certificate of default, and Plaintiffs' motion for default judgment all erroneously stated that Handspike had been served on May 30, 2013. In fact, service is asserted to have taken place on May 30, 2014. (*See* Dkt. No. 37, at 2 n.2.)

(ARR), 2005 WL 1711184, at *2 (E.D.N.Y. July 19, 2005).  The rule "give[s] wide latitude to courts in deciding when to grant extensions on time to serve, including permitting courts to grant extensions even absent good cause." *Gerena v. Korb*, 617 F.3d 197, 201 (2d Cir. 2010).

### A.   Good Cause Extension

"A party seeking a good cause extension bears a heavy burden of proof." *Alvarado v. Am. Freightways, Inc.*, No. 04 Civ. 9536 (JCF), 2005 WL 1467893, at *5 (S.D.N.Y. June 21, 2005).  "In determining whether a plaintiff has shown good cause, courts weigh the plaintiff's reasonable efforts and diligence against the prejudice to the defendant resulting from the delay." *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 66 (S.D.N.Y. 2010).  "Good cause is generally found only in exceptional circumstances where the plaintiff's failure to serve process in a timely manner was the result of circumstances beyond its control." *Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 419 (S.D.N.Y. 2013) (internal quotation marks omitted).  "An attorney's inadvertence, neglect, mistake or misplaced reliance does not constitute good cause." *E. Refractories Co. v. Forty Eight Insulations, Inc.*, 187 F.R.D. 503, 505 (S.D.N.Y. 1999) (internal quotation marks omitted).  "In considering whether good cause exists, 'the court should look to whether the plaintiff was diligent in making reasonable efforts to effect service, including but not limited to whether plaintiff moved . . . for an extension of time in which to serve the defendant.'" *Tuitt v. Long Island R.R. Co.*, No. 10 Civ. 8582 (ALC) (GWG), 2012 WL 3241658, at *2 (S.D.N.Y. Aug. 10, 2012) (quoting *AIG Managed Mkt. Neutral Fund v. Askin Capital Mgmt. L.P.*, 197 F.R.D. 104, 108 (S.D.N.Y. 2000)), *report & rec. adopted*, No. 10 Civ. 8582, Dkt. No. 14 (S.D.N.Y Sept. 10, 2012).

Plaintiffs have not shown good cause for their failure to serve Handspike within the period prescribed by Rule 4(m). According to the account provided by Plaintiffs' counsel, Christopher Brown:

> While [AMI's motion for summary judgment[3]] was pending, [Plaintiffs] hired APS Services in Atlanta to locate Mr. Handspike and his company, Down South Books[,] which was dissolved in 2010. . . . APS was unable to locate an address for Mr. Handspike or his Company. APS Services originally went to 2464 Mc[A]fee Rd[.], Decatur, GA to serve Handspike but was unable to serve him.

(Dkt. No. 38 ("Brown Aff.") ¶ 4.) Plaintiffs' counsel avers that he was able to "verify contact information for Handspike" after AMI settled Plaintiffs' claim against it, and proceeded in May 2014 to serve Handspike through Summer Woods, a relation of Handspike, at 2464 McAfee Road in Decatur, GA. (*Id.* ¶¶ 5-7.) Counsel contends "[u]pon information and belief" that Handspike "purposely avoided service of process," and that Woods "informed APS that she was told to tell APS that Handspike would never be there." (*Id.* ¶¶ 7-8.) The McAfee Road address was, as a matter of public record, the address of Handspike's defunct company, Down South Books, LLC. (*Id.* ¶ 4 & Ex. A.)

The evidence presented by Plaintiffs demonstrates that they were not diligent in making reasonable efforts to serve Handspike. Plaintiffs had located Handspike's McAfee Road address as early as sometime in 2013, although they do not specify precisely when. The address was also publicly available as the address of Down South Books. For reasons that are not made clear in the papers, Plaintiffs' process server "was unable to serve" Handspike after initially finding this

---

[3] Brown's affidavit states that AMI "filed a Motion to Dismiss." (Brown Aff. ¶ 4.) The Court assumes this is meant to refer to the motion for summary judgment that AMI filed on June 7, 2013. (*See* Dkt. No. 5.)

address.[4]  (Brown Aff. ¶ 4.)  Plaintiffs do not assert that they made any further efforts to serve Handspike, or to locate another address where he could be served, until May 2014—over a year after the complaint was filed in March 2013, and long after the expiry of the 120-day period provided in Rule 4(m).  "The diligence of the plaintiff's efforts to effect proper service is an important consideration in a determination of good cause."  *Alvarado*, 2005 WL 1467893, at *5.  And during all this time, Plaintiffs never made an application to the Court to extend the period for service under Rule 4(m).[5]  *See Spinale v. United States*, No. 03 Civ. 1704 (KMW) (JCF), 2005 WL 659150, at *4 (S.D.N.Y. Mar. 16, 2005) (holding the "failure of service is due not to extraordinary circumstances, but to neglect," after citing, *inter alia*, the "noteworthy" fact that "the plaintiffs made no effort to request an extension until . . . more than ten months after the deadline for service had passed"), *report & rec. adopted*, No. 03 Civ. 1704, Dkt. No. 67 (S.D.N.Y. Sept. 30, 2005), *aff'd sub nom. Spinale v. Ball*, 352 F. App'x 599 (2d Cir. 2009) (summary order).

Furthermore, Plaintiffs state that they attempted to find and serve Handspike only after they had already served AMI and its motion for summary judgment was already pending.

---

[4] To the extent that Plaintiffs attempt to establish good cause by implying that their process server may have been at fault, this is unavailing.  "[M]isplaced reliance on a process server does not suffice to establish good cause for a failure to effect service."  *Ping Chen ex rel. United States v. EMSL Analytical, Inc.*, 966 F. Supp. 2d 282, 306 (S.D.N.Y. 2013) (quoting *Sadler v. 148 Acad. Realty, LLC*, No. 09 Civ. 3338 (KMK), 2010 WL 3952862, at *1 (S.D.N.Y. Oct. 8, 2010)).

[5] As noted above, even after the complaint was served on Handspike, Plaintiffs failed to take action to obtain a default judgment until after the Court ordered them to show cause why the action should not be dismissed for failure to prosecute.  (*See* Dkt. No. 29.)  Then, Plaintiffs did not request to extend the time to serve Handspike until the filing of Brown's May 2015 affidavit, following the order to show cause why the action should not be dismissed for failure to comply with Rule 4(m).  (*See* Dkt. Nos. 37, 38.)

(Brown Aff. ¶ 4.)  The motion for summary judgment was filed on June 7, 2013, more than 70 days after the complaint was filed, and was decided on March 31, 2014, more than a year after the complaint was filed.  (*See* Dkt. Nos. 5, 17.)  Plaintiffs assert only that they hired an agent to locate Handspike during the pendency of the motion.  Thus, they have not established that they even *attempted* to locate Handspike during the 120-day period set out in Rule 4(m).  *See Stewart v. City of New York*, No. 06 Civ. 15490 (RMB) (FM), 2008 WL 1699797, at *7 (S.D.N.Y. Apr. 9, 2008) (declining to grant an extension of time *nunc pro tunc* "because [the plaintiff] took no steps to extend the Rule 4(m) deadline for service within a reasonable time after its expiration"); *see also Zapata v. City of New York*, 502 F.3d 192, 199 (2d Cir. 2007) (affirming Rule 4(m) dismissal where plaintiff "made no effort to effect service within the service period, neglected to ask for an extension within a reasonable period of time, and has advanced no cognizable excuse for the delay"); *Gerena*, 617 F.3d at 201 (affirming dismissal of claim under Rule 4(m) because the plaintiffs served a defendant outside the 120-day period and "had neither sought nor received an extension of time to serve" that defendant).

Plaintiffs' counsel asserts that he was "able to verify contact information for Handspike" after AMI settled the case.  (Brown Aff. ¶ 6.)  AMI allegedly "entered into a contract" with Handspike "relating to the story that is the subject of the litigation," and "mailed correspondence to Handspike at his address at 2464 Mc[A]fee Rd."  (*Id.* ¶ 5.)  But Plaintiffs provide no reason that the information regarding Handspike's address was not ascertainable from AMI much earlier than the date of the settlement.  In particular, there is no evidence that Plaintiffs sought information concerning Handspike's whereabouts through discovery from AMI.  *See Spinale*, 352 F. App'x at 600 (holding that the plaintiffs' "failure to take basic measures, *e.g.*, serving the government[, a co-defendant in the case,] with an interrogatory requesting [a defendant's]

address, evidences negligence"); *Vaher*, 916 F. Supp. 2d at 420 (finding no good cause for a Rule 4(m) extension where the plaintiff "blatantly and continually failed to pursue any of the many possible methods of discovering the information that he has now been demanding for more than a year").

Plaintiffs also contend that Handspike sought to evade service. If established, a defendant's evasion of service may constitute good cause. *See Cobalt Multifamily Investors I, LLC v. Arden*, No. 06 Civ. 6172 (KMW) (MHD), 2014 WL 3798183, at *2 n.1 ("[T]he Receiver speculates that Defendant intentionally evaded service, which other courts have found constitutes 'good cause.'" (citing case law)). The affidavit of Plaintiffs' counsel contains a hearsay statement from Handspike's cousin, who is asserted to have said that she was "told to tell [the process server] that Handspike would never be there." (Brown Aff. ¶ 7.) Apparently on this basis, counsel avers "upon information and belief" that Handspike was attempting to evade service. (*Id.* ¶ 8.)

The Court cannot find good cause based on evasion from the evidence presented. The fact remains that the address where Plaintiffs ultimately effected service on Handspike in May 2014 is the exact address Plaintiffs already had obtained at the time of their first attempt to serve Handspike. (*See* Brown Aff. ¶ 6.) Plaintiffs have provided no cogent reason why Handspike's purported evasion prevented them from serving Handspike at that same address at any point prior to May 2014, particularly since they have presented no evidence that they made other efforts to locate Handspike or determine where he could be served in the intervening time.

Plaintiffs have not established a justifiable reason for failing to serve Handspike for more than a year after this case was filed, nor that the delay was due to circumstances beyond their control. Accordingly, the Court cannot find that Plaintiffs have demonstrated good cause.

**B.     Discretionary Extension**

While a court "*may* grant an extension in the absence of good cause, . . . it is not required to do so." *Zapata*, 502 F.3d at 197. "To obtain a discretionary extension absent a showing of good cause, 'the plaintiff must ordinarily advance some colorable excuse for neglect.'" *Smith v. Bray*, No. 13 Civ. 7172 (NSR) (LMS), 2014 WL 5823073, at *6 (S.D.N.Y. Nov. 10, 2014) (quoting *Zapata*, 502 F.3d at 198 n.7). Courts deciding whether to grant a discretionary extension in the absence of good cause have looked (in addition to the considerations underlying the good cause analysis) to the following four factors: "(1) whether any applicable statutes of limitations would bar the action once refiled; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether defendant attempted to conceal the defect in service; and (4) whether defendant would be prejudiced by extending plaintiff's time for service." *DeLuca*, 695 F. Supp. 2d at 66. "Other considerations include whether service was eventually accomplished, and if so, how long after the required time period." *Cobalt Multifamily Investors*, 2014 WL 3798183, at *2 (internal quotation marks omitted).

On the first factor, the one-year statute of limitations applicable to defamation claims under New York law, *see* N.Y. C.P.L.R. § 215(3), would likely bar the refiling of this claim.[6] The fact that the statute of limitations has run is generally viewed as a factor that favors the plaintiff. *See Carroll*, 2005 WL 1711184, at *2. However, "it does not guarantee an extension for every case that may be time-barred if refiled." *Alvarado*, 2005 WL 1467893, at *6 (citation omitted); *accord E. Refractories*, 187 F.R.D. at 506 ("The fact that plaintiff's claims may be

---

[6] The Court noted in March 2014 that the allegedly defamatory statements may have been last republished on March 26, 2012. *See Etheredge-Brown v. Am. Media, Inc.*, 13 F. Supp. 3d 303, 306 (S.D.N.Y. 2014).

time-barred does not require us to exercise our discretion in favor of plaintiff."); *see also Zapata*, 502 F.3d at 197 ("Where . . . good cause is lacking, but the dismissal without prejudice in combination with the statute of limitations would result in a dismissal *with* prejudice, we will not find an abuse of discretion in the procedure used by the district court, so long as there are sufficient indications on the record that the district court weighed the impact that a dismissal or extension would have on the parties." (footnote omitted)).

On the second factor, Plaintiffs have provided some evidence suggesting that Handspike had actual notice of the claims in the complaint. Plaintiffs' counsel states "[u]pon information and belief" that "Handspike was aware of the litigation due to his communication with [AMI] in 2013 and [with] his family at the 2464 Mc[A]fee Rd. address." (Brown Aff. ¶ 6.) While the Court takes this assertion into account, it is not strong evidence of Handspike's notice of this litigation, as it appears to rely on counsel's speculation as to Handspike's communications with third parties.

The third factor is inapplicable, as there is no evidence that Handspike attempted to conceal the lack of service. And finally, as to the fourth factor, some prejudice may accrue to Handspike from the substantial delay in service. *See Zapata*, 502 F.3d at 198 ("It is obvious that any defendant would be harmed by a generous extension of the service period beyond the limitations period for the action, especially if the defendant had no actual notice of the existence of the complaint until the service period had expired."). The Court does not give significant weight to this factor, however, given (1) the possibility that Handspike had actual notice of the claims in the complaint, and (2) the fact that Handspike has failed to respond to the complaint in this matter.

At least one of these four considerations favors Plaintiffs. But the "overlapping equitable considerations" that informed the Court's finding that Plaintiffs lack good cause, *see Zapata*, 502 F.3d at 197—namely, Plaintiffs' lack of diligence in attempting to serve Handspike within the limits set by Rule 4(m), their failure to seek an extension within those time limits, and the fact that he was not served until more than 400 days after the filing of the complaint—weigh heavily against them. Further, "the Second Circuit has stated clearly that even if the balance of hardships favors the plaintiff a district court may still decline to excuse a failure to timely serve the summons and complaint where the plaintiff fails to advance some colorable excuse for neglect." *Vaher*, 916 F. Supp. 2d at 421 (citing *Zapata*, 502 F.3d at 198 & n.7); *see also Harper v. City of New York*, No. 09 Civ. 5571 (JG) (SMG), 2010 WL 4788016, at *6 (E.D.N.Y. Nov. 17, 2010) (declining to grant discretionary extension "where the need for the extension results entirely from counsel's neglect and the request for it came only after the time for service expired, in response to a motion to dismiss"), *aff'd*, 424 F. App'x 36 (2d Cir. 2011) (summary order).

Here, Plaintiffs have not put forth a colorable excuse for failing to serve Handspike for over a year following the filing of this action. Nor have they advanced any reason that they neglected to ask this Court for an extension of the time to serve Handspike, and then (after service was effected) disregarded their claim against Handspike until after they were prompted by this Court to take further action and then warned of the possibility of dismissal. "[W]here the party seeking an extension has failed to meet its burden, dismissal is appropriate even if the practical effect is to bar the plaintiff's claim." *Spinale*, 2005 WL 659150, at *3; *see also Zapata*, 502 F.3d at 198 ("[I]n the absence of good cause, no weighing of the prejudices between the two parties can ignore that the situation is the result of the plaintiff's neglect."); *Bogle-Assegai v. Connecticut*, 470 F.3d 498, 509 (2d Cir. 2006) (affirming dismissal of claims where the plaintiff

"made no effort to show good cause for her failure and never requested an extension of time during the 600-odd days when the case was pending" after being informed of objections to service). Accordingly, the Court declines to exercise its discretion to grant a retroactive extension of time for service under Rule 4(m). The claim against Handspike is dismissed.

### III.     Conclusion

For the foregoing reasons, Plaintiffs' claim against Handspike is DISMISSED under Rule 4(m).

The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated:  August 14, 2015
        New York, New York

_____
J. PAUL OETKEN
United States District Judge